```
        UNITED STATES DISTRICT COURT
      FOR THE DISTRICT OF NEW HAMPSHIRE
```

Josephine Amatucci

    v.                                              Civil No. 11-cv-512-SM

Charles Hamilton et al.

### REPORT AND RECOMMENDATION

Before the court for preliminary review are pro se plaintiff Josephine Amatucci's complaint (doc. no. 1) and two supplements thereto (doc. nos. 5 & 6), which the court considers collectively as the complaint, filed pursuant to 42 U.S.C. § 1983. See 28 U.S.C. § 1915(e)(2); United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(1)(B). This is the third action Amatucci has brought in this court arising out of property disputes she has had with her neighbors in Wolfeboro, New Hampshire. See Amatucci v. Hamilton, No. 05-cv-259-SM ("Amatucci I"); Amatucci v. Bolduc, No. 06-cv-225-JD ("Amatucci II"). She also brought at least one state-court action involving this same basic dispute. See Amatucci v. Hamilton, No. 2008-C-117 (N.H. Super. Ct., Carroll

Cnty.) ("Amatucci III").[1]  Even under the favorable standard of review afforded pro se litigants at this preliminary stage, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of the pro se party), because the current suit is yet another iteration of Amatucci's familiar complaint based on the same underlying facts, it is barred under the doctrine of res judicata and should be dismissed.

**Discussion**

I.  Factual Background

Amatucci's legal troubles related to the claim in this case began in 2002, when she was arrested for damaging a car that belonged to her neighbor's guest and that was parked in front of her driveway.  The charges from that incident were dismissed, but Amatucci's problems with her neighbors persisted, eventually culminating the following summer, when Amatucci and her

---

[1] The court is aware that Amatucci is currently litigating another related suit in state court, see Amatucci v. Hamilton, No. 212-2011-CV-00249 (N.H. Super. Ct., Carroll Cnty.) ("Amatucci IV"); however, because a final judgment has not yet been issued in that action, it is not factored into the analysis here.  See Torromeo v. Fremont, 438 F.3d 113, 116-17 (1st Cir. 2005) (discussing what constitutes a final judgment under New Hampshire res judicata law).

neighbor, Pauline Maloney, each filed a stalking petition against the other.  See Maloney v. Amatucci, No. 03-E-0080 (N.H. Super. Ct., Carroll Cnty. Aug. 6, 2003), and Amatucci v. Maloney, No. 03-E-0081 (N.H. Super. Ct. Carroll Cnty. July 1, 2003)[2].  On November 12, 2003, a hearing was held on the stalking petitions, at which Maloney and Amatucci, who each appeared pro se, mutually consented to a bench ruling that enjoined them from any further contact or communication with one another or any member of the other's family.  That same day, the judge issued a written order reiterating the bench ruling, see id., Order (Nov. 12, 2003) ("Restraining Order"); however, the written order was not mailed until the following day and was not received by Amatucci until sometime later.

On November 13, 2003, the day after the hearing, Amatucci mailed a "demand letter" regarding a separate property dispute to Norman Bolduc, who is Pauline Maloney's brother and another of Amatucci's neighbors.  Because Bolduc is a member of Maloney's family, the pair went to the Wolfeboro Police Department where they reported Amatucci's violation of the

---

[2] The record indicates that the stalking petitions, which were originally filed in district court but were transferred to the superior court, initially were designated as docket numbers 03-cv-091 and 03-cv-092.  See Compl., Add. (attaching Transfer Order, N.H. Dist. Ct. Carroll Cnty. July 10, 2003).

Restraining Order. Amatucci was arrested pursuant to state law that requires police officers to arrest persons who violate permanent protective orders. See N.H. Rev. Stat. Ann. ("RSA") 173-B:9, I(a) (Supp. 2011); see also RSA 633:3-a, III-a (2007). The charges against Amatucci for violating the Restraining Order ultimately were dismissed.

Eight years later, in 2011, a court clerk advised Amatucci that the Restraining Order was a civil order that had been issued in equity. After learning this, Amatucci filed a motion for clarification and received the following order:

> Upon review of the prior Orders in this matter, clarification is not deemed necessary. Specifically, the prior Orders were directed to remain "in full force and effect pending further Order of the Court" rather than for the finite term of Stalking Orders (see NHRSA 633:3-a, and NHRSA 173-B). The Orders are therefore by definition Restraining Orders in Equity, which was the intent of the Court.

Maloney v. Amatucci, No. 212-2003-EQ-0080-0081 (N.H. Super. Ct., Carroll Cnty. Aug. 17, 2011). Based on the above-quoted order, Amatucci believes that she should have been subject only to civil enforcement procedures for contempt of court rather than having been criminally charged, and that her 2003 arrest was the result of a conspiracy among the defendants to defraud the court.

4

II. <u>Amatucci's Claims</u>

In this case, Amatucci alleges that both the 2003 arrest and all the subsequent judgments against her resulted from a conspiracy to commit "fraud on the court." Amatucci contends that she should not be precluded from bringing this action because the state-court judge who issued the 2003 arrest warrant did not have jurisdiction over her, and, therefore, all the subsequent judgments against her based on the presumed validity of her initial arrest were similarly issued without jurisdiction and should be vacated. Amatucci also contends that this action is not barred by the statute of limitations because she only recently (in 2011) discovered the fraud on the court she is now alleging. Amatucci cites Rule 60(b) to support the relief she now seeks. <u>See</u> Fed. R. Civ. P. 60(b) (allowing relief from a judgment, order or proceeding, based on, among other things, mistake, newly discovered evidence, fraud or misconduct).

Generously construing the complaint in Amatucci's favor, as is required at this preliminary stage of review, the court finds that Amatucci has asserted the following claims:

1. All defendants engaged in a conspiracy to commit "fraud on the court," <u>see</u> Compl. Counts 1, 3-6;

2. The Town of Wolfeboro is liable, under 42 U.S.C. § 1983, for false arrest and failing to investigate a false arrest, <u>see</u> Compl. Count 8 and ¶¶ 86-87;

5

    3.   Defendants are liable under state law for:
        (a) kidnapping/abduction, terrorism, extortion,
           see Compl. Count 2;
        (b) intentional infliction of emotional distress,
           see Compl. Count 7; and
        (c) elder abuse, see Compl. Count 9.

III. Analysis

Because a finding of "fraud on the court" could render the prior judgments against Amatucci void and thereby enable her to proceed, this claim must be addressed first. See 11 Charles A. Wright, Arthur R. Miller, Mary K. Kane, Richard L. Marcus, Fed. Practice & Proc. Civ. 2d § 2870 at 409-10 (Supp. 2011) ("Wright & Miller") (citing Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245 (1944) to explain the inherent power of the court to protect the integrity of its judgments).

    **A.  Fraud on the Court**

Amatucci contends that the prior judgments against her should be voided because of newly discovered evidence that her 2003 arrest was a mistake, which defendants knew but chose to misrepresent, in order to defraud the court. Amatucci invokes Rule 60(b) to advance her "fraud on the court" claim, but her reliance on Rule 60(b) is misplaced. Motions made under Rule 60(b) must be made to the court that issued the challenged

6

decision, see Fed. R. Civ. P. 60(b), and, if the motion is based on mistake, newly discovered evidence or fraud, as Amatucci asserts here, it must be made within one year of the issuance of the ruling. See Fed. R. Civ. P. 60(c)(1) (requiring motions made under Rule 60(b)(1)-(3) to be made within one year). In this action, Amatucci is not moving to vacate just one decision, but seeks to have all the rulings against her, issued in both state and federal court, voided, which relief is plainly unavailable under Rule 60(b).[3]

Even if this complaint were construed as a motion filed in Amatucci I or Amatucci II, Amatucci was well beyond the one-year time limit for making such motions when she initiated the instant complaint. Further, nothing about the 2003 proceedings was concealed from Amatucci so as to justify tolling the one-year time limit for motions made under Rule 60(b) (1), (2) or (3). See Fed. R. Civ. P. 60(c)(1). Finally, Amatucci's attempt to avoid the one-year time limit by invoking Rule 60(b)'s "savings clause" fares no better, because claims under the

---

[3] An action for "fraud upon the court" brought here under Rule 60 could not void any of the state-court decisions at issue. See Wright & Miller, § 2868 at 405-07 (citing authority). However, because Amatucci alleges the fraud was part of an ongoing conspiracy that began with the 2003 arrest, the underlying facts are relevant to whether the federal courts were defrauded in Amatucci I and Amatucci II.

savings clause must be for distinct and extraordinary circumstances that warrant relief beyond the standard one-year time limit.  See Fed. R. Civ. P. 60(b)(6) (allowing issuing court to consider a motion based on "any other reason that justifies relief"); see also Simon v. Navon, 116 F.3d 1, 5 (1st Cir. 1997) (allowing motions under Rule 60(b)(6) only "when none of the first five subsections pertains" (quotation omitted)); Wright & Miller, § 2864 at 366-68 (describing "extraordinary circumstances" as government inaction, unusual delays by courts, or egregious misconduct by parties).

    Reading Amatucci's complaint generously, and to avoid the restrictions of Rule 60(b), it may be construed as having been brought under Rule 60(d).  See Fed. R. Civ. P. 60(d) (allowing an independent action to obtain relief from a judgment, order or proceeding, or to set aside a judgment for fraud on the court, with no time limit).[4]  To obtain relief via Rule 60(d), there

---

[4] In 2007, the language of Rule 60(b) was amended and restyled "to make [it] more easily understood," which resulted in portions of subsection (b) being broken out into a new subsection (c), related to timing, and a new subsection (d), related to the court's power to entertain an independent action or to set aside a judgment for fraud on the court.  The former reference to this relief in subsection (b) was deleted as unnecessary.  See Fed. R. Civ. P. 60, Advisory Committee Notes, 2007 Amendments.  Accordingly, some of the case law on which the court relies to analyze Amatucci's "fraud on the court" claim under Rule 60(d) refers to the earlier version of Rule 60(b).

must be a severity of fraud that extends beyond the particular litigants and infects the judicial process itself. See United States v. Beggerly, 524 U.S. 38, 46 (1998) (independent actions are reserved for "'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata" (quoting Hazel-Atlas Glass Co., 322 U.S. at 244)); see also Roger Edwards, LLC v. Fiddes & Son, Ltd., 427 F.3d 129, 133 (1st Cir. 2005) (requiring egregious misconduct that corrupts the judicial process itself to escape the limitations imposed on ordinary motions for relief under Rule 60(b)(3)); George P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44, 48 (1st Cir. 1995) (describing "fraud upon the court" as resulting in a "manifestly unconscionable" judgment). To state a claim for "fraud on the court," Amatucci must allege that defendants:

> sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

---

The standard for evaluating a "fraud on the court" claim under Rule 60, however, has remained unchanged since it was pronounced by the Supreme Court in 1944 in Hazel-Atlas Glass Co., 322 U.S. at 245-46.

Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989); see also Roger Edwards, LLC, 427 F.3d at 133 (citing authority).

Amatucci's "fraud on the court" allegations fail to meet the exacting standards required for relief under Rule 60(d). To summarize her argument, Amatucci principally contends that she never should have been arrested on criminal charges for violating a civil protective order, but instead should merely have been subpoenaed to appear in court for contempt. Amatucci asserts that she recently (in 2011) discovered the civil nature of the Restraining Order. Amatucci also claims that the scope of the injunction contained in the Restraining Order was broader than the court's November 12 bench ruling, which had been limited to prohibiting contact between Maloney and Amatucci. Finally, Amatucci asserts that her contact with Bolduc was allowed under state law, so her demand letter did not violate the Restraining Order. Amatucci submits that the above "mistakes" resulted in her unlawful arrest, which defendants knew, but which they have conspired to misrepresent, throughout her arduous litigation history.

Amatucci's "fraud on the court" claim founders, because it is based on a misapprehension of the law governing the Restraining Order. If the alleged legal and factual mistakes

had been made as Amatucci contends, she might have a viable claim for "fraud on the court." Those allegations, however, cannot be accepted as true, because they are contradicted by the complaint itself.[5] The complaint demonstrates that Amatucci was charged with the offense of stalking because she mailed a letter to Bolduc in violation of the explicit terms of the Restraining Order. See RSA 633:3-a, I(c) (2007) (defining stalking as, among other things, a single "act of communication" done in violation of a protective order). The complaint also shows that Amatucci's violation of the civil protective order constituted the criminal offense for which Amatucci was arrested. See RSA 633:3-a, III-a (referring to RSA 173-B for type of relief and penalties court shall order to enforce protective orders); see also RSA 173-B:9, I(a) (requiring arrest of defendant who violates permanent protective order). There was no "mistake" made when the state district court judge issued the warrant that led to Amatucci's 2003 arrest.

Amatucci's failure to comprehend why she was arrested for violating the Restraining Order does not render her 2003 arrest

---

[5] Amatucci attaches several documents to her complaint that the court construes as part thereof for all purposes. See Fed. R. Civ. P. 8(e) & 10(c). Amatucci specifically relies on the transcript from the November 12, 2003 hearing, to allege the scope of the Restraining Order, see e.g., Compl. ¶¶ 22 & 23.

11

invalid, or the proceedings surrounding her arrest a "fraud on the court." Nothing about the civil nature of the Restraining Order, or the factual and legal basis for her 2003 arrest, was concealed from or misrepresented to the state district court judge who issued the 2003 arrest warrant. Accordingly, the subsequent decisions that were based, at least in part, on defendants' representations about the validity of that 2003 arrest cannot be understood as having been the result of an unconscionable scheme to "improperly influence the trier" or to otherwise "interfere with the judicial system's ability to impartially adjudicate" Amatucci's property-related disputes. Aoude, 892 F.2d at 1118. In short, the complaint cannot plausibly be understood as stating a claim for "fraud on the court." See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (complaint must "state a claim to relief that is plausible on its face").

    **B. Res Judicata**

With no viable "fraud on the court" claim, the final judgments issued in Amatucci I, Amatucci II, and Amatucci III all stand, and bar Amatucci from pursuing this action. Amatucci now contends that the prior suits would have been decided in her favor if the courts had known: that she only violated a civil

order; that both the 2002 and 2003 arrest warrants were invalid; and that the state district court judge who issued the 2003 arrest warrant did not have jurisdiction to issue orders in equity. These claims are yet another attempt by Amatucci to obtain review of the property disputes she has had with her neighbors, which disputes have been thoroughly litigated in Amatucci I, Amatucci II and Amatucci III. Amatucci's claims are, therefore, precluded by the doctrine of res judicata.

Because Amatucci has final judgments against her in state and federal court, both New Hampshire law and federal law governing res judicata apply. See Torromeo, 438 F.3d at 116 (citing Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 81 (1984)); see also Banco Santander de P.R. v. Lopez-Stubbe, Tr. (In re Colonial Mortg. Bankers Corp.), 324 F.3d 12, 16 (1st Cir. 2003). Under both state and federal law, the doctrine will apply if: (1) there has been a final judgment on the merits in an earlier proceeding; (2) there is sufficient identity between the causes of action asserted in the earlier and the later suits; and (3) there is sufficient identity between the parties or their privies in the two actions. See id. (explaining federal res judicata law); see also Torromeo, 438 F.3d at 115-16 (same under New Hampshire law).

The first element is clearly satisfied, as there have been final judgments on the merits in all three prior actions. See Amatucci I, 2007 WL 1825177 (D.N.H. June 25, 2007) (order granting summary judgment for defendants), aff'd, No. 07-229 (1st Cir. Apr. 9, 2008); Amatucci II, 2006 WL 3065502 (D.N.H. Oct. 27, 2006) (order dismissing case) (no appeal taken); Amatucci III (N.H. Super. Ct., Carroll Cnty. Dec. 12, 2008) (order granting summary judgment for defendants), aff'd, No. 2009-0105 (N.H. July 10, 2009).[6]

The second element of res judicata, i.e., identity of the causes of action, is also satisfied. Amatucci's claims in this action include, in addition to the "fraud on the court" claim discussed above, a malicious-prosecution claim against the Town of Wolfeboro, and state-law claims for kidnapping/abduction, terrorism, extortion, intentional infliction of emotional distress, and elder abuse. "Res judicata promotes judicial efficiency and prevents 'claim-splitting' by requiring litigants to assert all of their factual allegations and legal theories, including jurisdictional allegations, pertaining to their claim the first time they come to court." Maher v. GSI Lumonics,

---

[6] Following her unsuccessful appeals, Amatucci filed motions for reconsideration in both Amatucci I and Amatucci III, which were also denied.

Inc., 433 F.3d 123, 126 (1st Cir. 2005). It bars not only "those theories that actually were litigated in the earlier action but also those theories that could have been litigated therein." In re Colonial Mortg. Bankers Corp., 324 F.3d at 20 (citing Allen v McCurry, 449 U.S. 90, 94 (1980)); see also Gray v. Kelly, 161 N.H. 160, 165, 13 A.3d 848, 852 (2010) (explaining that cause of action includes "all theories on which relief could be claimed on the basis of the factual transaction in question" (internal quotation omitted)); Brzica v. Trs. of Dartmouth Coll., 147 N.H. 443, 455-56, 791 A.2d 990, 1000 (2002) (barring second action even where plaintiff is prepared to present new evidence or theories).

To the extent Amatucci was aggrieved by either the 2002 or 2003 arrest, or the procedures that were followed to enforce the Restraining Order, any claims based thereon either were, or could have been, raised in her prior lawsuits and are precluded as to all parties to those prior actions. The doctrine of res judicata "relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, and, by preventing inconsistent decisions, encourages reliance on adjudication." Cruz Berríos v. González-Rosario, 630 F.3d 7, 11 (1st Cir. 2010) (quoting McCurry, 449 U.S. at 94 (alterations omitted)).

Amatucci's current claims cannot plausibly be understood as arising out of a factual transaction that is new or distinct from the operable facts at issue in Amatucci I, Amatucci II, and Amatucci III. Thus, the second element of res judicata is satisfied.

The third element is also satisfied, as all of the defendants named in the current suit, with the exception of the three attorney defendants (as to whom Amatucci has failed to state any plausible claim for relief as explained more fully below), were parties to one or more of her earlier federal or state court actions. See Amatucci I; Amatucci II; Amatucci III; see also Notice to the Court (doc. no. 4) (attaching Amatucci IV, Order granting Defs.' Mot. to Dismiss, slip op. at 7 (Apr. 2, 2012) (recounting Amatucci's litigation history)).

While res judicata is an affirmative defense, to avoid judicial waste, a court may dismiss an action sua sponte when a plaintiff is clearly precluded from relitigating claims that either were, or could have been, litigated in a prior action. See In re Colonial Mortg. Bankers Corp., 324 F.3d at 16 (citing Bezanson v. Bayside Enterps., Inc., 922 F.2d 895, 904 (1st Cir. 1990)). Because all the elements of res judicata are satisfied here, Amatucci cannot state an actionable claim against any of

the defendants who were parties or privies to the prior lawsuits and, therefore, the complaint should be dismissed as to them. See 28 U.S.C. § 1915(e)(2); see also LR 4.3(d)(1)(B).

### C. Attorney Defendants

There are three named defendants in this lawsuit who were not involved in any of Amatucci's prior lawsuits. Those new defendants are two attorneys who defended the Town of Wolfeboro in the prior Amatucci lawsuits and one attorney who was Amatucci's public defender in state court. Amatucci's complaint fails, however, to state a cognizable claim against any of them. Amatucci alleges that they were among the conspirators who defrauded the court but, as discussed above, she has failed to state a plausible claim of "fraud on the court." See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (explaining two-pronged approach to determine whether a complaint states a plausible claim); see also Slotnick v. Garfinkle, 632 F.2d 163, 165 (1st Cir. 1980) (per curiam) (although "pro se complaints are to be read generously, allegations of conspiracy must nevertheless be supported by material facts, not merely conclusory statements" (citation omitted)).

Amatucci asserts the same state-law claims against these three defendants as she does against the other defendants. The state-law claims also fail, either because: (1) she has not alleged facts to support them, see Iqbal, 556 U.S. at 681 (conclusory allegations are not entitled to presumption of truth); or (2) she has already had a "full and fair opportunity for judicial resolution of the same issue[s]," Fiumara v. Fireman's Fund Ins. Cos., 746 F.2d 87, 97 (1st Cir. 1984), and is, therefore, collaterally estopped from raising them again now, see Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 770-71 (1st Cir. 2010) (explaining issue preclusion), cert. den., 131 S.Ct. 1016 (2011). A defendant, like the three attorney defendants here, may invoke the doctrine of defensive collateral estoppel to prevent a plaintiff, like Amatucci, from relitigating issues that were actually litigated in an earlier action and were resolved by a valid and binding final judgment. Id.

Finally, because there is no viable federal claim, the court should decline to exercise its supplemental jurisdiction over any lingering state law claims. See 28 U.S.C. § 1367(c)(3). The court recommends that all the claims against

the three attorney defendants also be dismissed. See 28 U.S.C. § 1915(e)(2); LR 4.3 (d)(1)(B).

## Conclusion

For the reasons set forth above, the court recommends that Amatucci's complaint be dismissed with prejudice, and that the case be closed. Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

May 18, 2012

cc: Josephine Amatucci, pro se

LBM:jkc